UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MOHAMAD ABOUKHODR, on behalf of himself and all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>JP MORGAN CHASE BANK, N.A.,<br><br>Defendant. | Case No. **2:21-cv- 12496** |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff, Mohamad Aboukhodr ("Mr. Aboukhodr" or "Plaintiff"), on behalf of himself and others similarly situated, alleging the following facts in support of this Class Action Complaint against JPMorgan Chase Bank, N.A. ("Chase" or "Defendant").

**PRELIMINARY STATEMENT**

1. This is a class action complaint prosecuted for the Defendant's violation of the Federal Equal Credit Opportunity Act (ECOA), 15 U.S.C. §1691 *et seq*.

2. Chase regularly accepts and processes consumer credit applications, extends credit, services existing credit accounts, participates in credit decisions and takes adverse actions against consumers.

3. Despite this role, Chase did not provide Mr. Aboukhodr with an ECOA-compliant adverse action notice when it unilaterally terminated his Chase credit accounts.

4. Upon information and belief, Chase purposely avoids providing consumers with notices of adverse actions that provide the principal reason for terminating an account.

5. Failure to provide the principal and truthful reason for terminating an account violates the ECOA.

6. Specifically, and by example only, when Chase unilaterally changes the terms of credit granted to an applicant by canceling the account, which is an adverse action against an applicant, and supplies the reason, "because continuing the relationship creates possible reputational risk to our company," it does not supply the actual ECOA-compliant reason for the cancelation in or change in terms of credit.

7. Therefore, Chase's adverse action notice does not disclose the principal, accurate or specific reasons for taking adverse actions as required under the ECOA.

8. In addition to supplying a pretextual, false, inadequate, or secondary reason instead of the true or principal reason for taking adverse action, the Defendant's adverse action notices fail to supply other mandatory disclosures

required by the ECOA.

9. Defendant also unlawfully discriminates against credit applicants based on their race, color, religion, national origin, sex or marital status, or age.

10. Specifically, and by example only, Defendant discriminated against Plaintiff when it provided as a reason for his credit card accounts' closures the possibility of "reputational risk."

11. Mr. Aboukhodr is not a reputational risk to Chase.

12. Mr. Aboukhodr is an applicant and consumer with excellent credit, who was compliant with the terms of his Chase accounts, and had a low credit utilization rate.

13. This action is brought for equitable and declaratory relief together with costs and attorneys' fees pursuant to the Equal Credit Opportunity Act (ECOA) 15 U.S.C. §1691 et. seq., and in particular § 1691(d) and its implementing regulations 12 C.F.R. 1002.9 (Regulation B) and § 1691(a)(1).

## JURISDICTION

14. The Court has federal question jurisdiction conferred by 28 U.S.C. § 1331 and 15 U.S.C. §1691e.

15. The Court also has supplemental jurisdiction under 15 U.S.C. § 1367.

16. Venue is proper because Defendant has physical presence in the District and regularly does business in Michigan, including with Plaintiff, who resides in

Michigan.

## PARTIES

17. Mr. Aboukhodr is a natural person who was an "applicant," "consumer," and "person" protected by the Equal Credit Opportunity Act.

18. Mr. Aboukhodr lives in the city of Dearborn, Wayne County, Michigan.

19. Chase is a foreign corporation engaged in the business of issuing credit cards, with a principal place of business located at 1111 Polaris Parkway, Columbus, OH 43240.

20. Chase can be served through its registered agent, CT Corporation System, located at 4400 Easton Commons Way, Suite 125, Columbus, Ohio 43219.

21. Chase is a "creditor" as defined by the ECOA and a "person" for the purposes of the Michigan Penal Code §750.147a(1).

22. Mr. Aboukhodr and each putative class member are "applicants" under the ECOA as defined by the implementing Regulation B, which defines an applicant as "any person who requests or who has received an extension of credit from a creditor, and includes any person who is or may become contractually liable regarding an extension of credit. The term 'applicant' also includes guarantors, sureties, endorsers, and similar parties." 12 C.F.R 1002.2(e).

## FACTS

23. Mr. Aboukhodr is a Middle Eastern, Muslim man.

24. Mr. Aboukhodr had applied for and received multiple extensions of credit from Chase. Chase extended to Mr. Aboukhodr four Chase credit card accounts.

25. Mr. Aboukhodr's four Chase credit accounts were in good standing, up to date, paid on time, and active in August of 2021.

26. In or about the end of August of 2021, Chase sent Mr. Aboukhodr a notice dated August 13, 2021 (the "Notice"), stating that it was closing his credit card accounts ending in 2505, 4194, 6429, and 6606 "because continuing the relationship creates possible reputational risk to [the] company."

27. The Notice indicated that Chase would close all of Mr. Aboukhodr's Accounts on September 11, 2021.

28. On or about September 11, 2021, Chase closed all of Mr. Aboukhodr's accounts, including his checking, savings, and credit card accounts.

29. Mr. Aboukhodr, who had not yet opened the Notice from Chase, first found out about the closures in or around September, when all his Chase credit and debit cards were declined while he was grocery shopping, causing him great embarrassment.

30. Immediately after leaving the grocery store, Mr. Aboukhodr called Chase to inquire why all of his credit and debit cards were declined.

31. Chase informed Mr. Aboukhodr that they had closed all of his accounts,

including his checking, savings, and credit card accounts, and a letter had been sent to him in August.

32. Mr. Aboukhodr hurried home and opened the Notice.

33. After reading the letter, Mr. Aboukhodr contacted Chase seeking reconsideration of its decision to close Plaintiff's accounts.

34. He spoke to a representative of Defendant who informed him reinstatement was not possible and his accounts would remain closed.

35. The representative told him Chase was not able to provide Mr. Aboukhodr with any more information regarding the account closures.

36. However, the agent informed Mr. Aboukhodr that Chase sometimes closes customer accounts due to a customer's social media posts.

37. Mr. Aboukhodr informed the representative that he does not have any social media accounts.

38. Chase took the adverse action against a law-abiding citizen, who was current and in compliance with the terms of his credit agreements, around the same time it was reported that Chase sent the same adverse action letter to Michael Flynn on or about August 20, 2021.

39. Michael Flynn is an infamous and admitted liar who worked against the interests of the United States and who pled guilty in federal court for making false statements in violation of federal law in connection with the FBI's investigation of

Russian interference in the United States elections. *United States v. Michael Flynn*, 1:17CV232-RC, Doc. 4, (D.D.C.).

40. Michael Flynn is also well known because of his inflammatory statements to large groups covered by the national press and his own publications, including publicly calling for a violent overthrow of the United States government. https://www.thedailybeast.com/twitter-permanently-bans-michael-flynn-sidney-powell-in-qanon-purge?ref=topic

41. Flynn has been banned from social media platform Twitter.

42. After Flynn publicly complained about his accounts being terminated by Chase with the same letter that Chase sent to Mr. Aboukhodr, Chase apologized to Flynn and reinstated his accounts despite the fact that Flynn actually could cause Chase reputational harm for dealing with a person who advocates the overthrow of the government.

43. Chase has had over one hundred legal violations in the past ten years, including, but not limited to, non-employment discriminatory practices, employment discrimination, investor protection violations, banking violations, fraud, wage and hour violations, anti-money laundering deficiencies, consumer protection violations, and many others. JPMorgan Chase Violation Tracker (goodjobsfirst.org)

44. Mr. Aboukhodr is not a public figure; he is only a private citizen and a good customer of Chase who could not possibly cause Defendant reputational harm.

45. Mr. Aboukhodr is also a Muslim man and it did not escape his notice that Chase closed ALL his credit card accounts on the 20-year anniversary of 9/11.

46. The fact that Chase intentionally closed the Accounts on the 20-year anniversary of 9/11 was shocking and demeaning to Mr. Aboukhodr.

47. Although the Card Agreement may have provided Chase the right to terminate the card agreements, Chase was still required by the ECOA to provide Mr. Aboukhodr with a reason for the termination in writing.

48. The ECOA also prohibits Chase from discriminating against Mr. Aboukhodr based on his race, color, religion, national origin, sex or marital status, or age.

49. Upon information and belief, based on the reason provided of "possible reputational risk" and the fact Mr. Aboukhodr was compliant with the terms of his credit card accounts, had excellent credit, and low credit utilization rate overall, Chase's reasons were not only untruthful, but its actions constitute unlawful credit discrimination under the ECOA.

50. When Mr. Aboukhodr called Chase to request reinstatement of his terminated accounts, instead of reinstating the accounts as it did for a white public figure, Michael Flynn, Chase refused to reconsider the adverse action or explain the "reputational harm" that Mr. Aboukhodr presented.

51. A creditor may elect to provide a consumer with a statement of reasons

in the adverse action notice itself, or it may provide the consumer with a disclosure both of his right to receive a written statement of reasons and the identity of the person from whom the written statement of reasons may be obtained. Chase's adverse action notice did not provide either method of communicating the statement of reasons for taking adverse action against the Plaintiffs.

52. Chase knew or should have known the adverse action notice it sent to Mr. Aboukhodr was not only non-compliant with the ECOA, but that it was false.

53. Upon information and belief, Chase knew that Mr. Aboukhodr was entitled to adverse action notices because, although illegal due to its pretext for termination, Chase did provide Mr. Aboukhodr with an ECOA notice, complete with ECOA warnings. Once Chase sent an ECOA notice to Mr. Aboukhodr, it was obligated to send a notice that was compliant with the ECOA.

54. Chase is a large credit granting agency that extends credit to thousands of consumers each year, and knew or should have known about the requirements of Regulation B. Therefore, there is no justifiable reason or good faith basis for its failure to comply with the minimum adverse action requirements of Regulation B.

55. Chase also knew or should have known that the ECOA prohibited discrimination based on race, religion, or national origin.

56. Chase knew that Mr. Aboukhodr was a Middle Eastern Muslim person, and upon information and belief, based on the reason provided, Chase likely closed

his accounts based on his race, religion, or national origin.

57. Chase's conduct in sending the adverse action notice to Plaintiff and the class and closing their accounts was not a mistake. Rather, it was exactly as Chase intended.

58. The ECOA adverse action notice requirement was enacted as "a strong and necessary adjunct to the anti-discrimination purpose" of the statute and to "fulfill[] a broader need: rejected credit applicants will now be able to learn where and how their credit status is deficient and this information should have a pervasive and valuable educational benefit." S. REP. No. 94-589, at 406, 408, 1976 WL 13838, at *4, *7 (Jan. 21, 1976).

59. Upon signing of the amendment expanding the ECOA into law, President Gerald Ford issued a statement on March 23, 1976, in which he confirmed that in addition to its anti-discrimination purpose, the law "permits the Attorney General, as well as private citizens, to initiate suits where discrimination in credit transactions has occurred. It also provides that a person to whom credit is denied is entitled to know of the reasons for the denial." Presidential Statement on Signing the Equal Credit Opportunity Act Amendments of 1976, available at http://www.presidency.ucsb.edu/ws/?pid=5745 (last visited February 21, 2017). These "twin goals" of the 1976 amendment to the Act have been repeatedly recognized by the courts as the basis for the statutory requirement.

60. Chase's failure to provide an ECOA-compliant adverse action notice, which contains the principal reason for denial of credit, deprived Mr. Aboukhodr of the right to information mandated by Congress to further the anti-discrimination and educational purposes of the statute.

61. Chase's conduct against Mr. Aboukhodr is the very type of conduct that caused the ECOA to be enacted by Congress in order to protect consumers.

62. The injuries that Mr. Aboukhodr and the class suffered as a result of Chase's violations are the very types of injuries that the ECOA was enacted to address.

63. Because the accounts were closed when there were balances and activity, the closure by a credit grantor is a negative credit reporting event because it has a negative effect on credit utilization ratio and credit mix.

64. These negative events lowered Mr. Aboukhodr's credit score. https://www.equifax.com/personal/education/credit/report/inactive-credit-card-account-closed/

65. Chase's malfeasance caused a cognizable informational injury to Mr. Aboukhodr who is left baffled by the decision to close all of his credit card accounts despite the fact that he has well-established accounts all in good standing.

66. Mr. Aboukhodr was injured because he was deprived of the information he was entitled to under the ECOA, which would provide him knowledge of conduct

within his control that caused Chase's decision to close the accounts.

67. Mr. Aboukhodr was injured because he was deprived of information that would have informed him whether he is the victim of credit discrimination and, based on the reason provided and his credit information, he was a victim of credit discrimination.

68. Mr. Aboukhodr was injured because he did not receive the benefit of the favorable credit terms of the accounts, which Plaintiff used to his financial benefit.

69. Mr. Aboukhodr was injured because he suffered damage to his credit standing when Chase closed the accounts.

70. Mr. Aboukhodr was injured because he suffered physical injury as a result of emotional distress, intense anxiety, stress, sleep deprivation, embarrassment, lost time, strain on his relationships, and inconvenience.

71. Mr. Aboukhodr was injured because he suffered economic injuries resulting from the closures.

72. By way of example only, Mr. Aboukhodr was enrolled in Automatic Payments to pay his property taxes with one of his Chase accounts.

73. His payment was scheduled to a time shortly after the accounts were closed.

74. Because the account was closed, the automatic payment bounced and

Mr. Aboukhodr was required to pay interest and fees associated with the bouncing and was removed from the automatic payment plan, without an opportunity to reapply.

75. Furthermore, Mr. Aboukhodr has the added stress of having to remember to send out his property tax payments every month since he is no longer enrolled in automatic payment.

76. The putative class members suffered the same or similar informational, financial, and emotional injuries that Mr. Aboukhodr suffered, which injuries the ECOA and Michigan Penal Code 750.147a(1) were designed to protect against.

77. Chase failed to provide an adequate statement of reasons for its adverse action to the class members as required under the ECOA.

78. Upon information and belief, Chase unlawfully discriminated against Plaintiff and the putative class based on their race, religion, and/or national origin.

79. This action is alleged as a class action pursuant to Fed. R. Civ. P. 23(b)(3) and 15 U.S.C. § 1691e (a) on behalf of the following class of Michiganders ("ECOA Adverse Action Class") who suffered violations of 15 U.S.C. § 1691(d) initially defined as:

(a.) All natural persons, (b.) residing in the geographic boundaries of Michigan; (c.) to whom JPMorgan Chase Bank N.A. did provide a notice; (d.) similar to the notice attached as Ex. 1 to the Class Complaint (e.) within five years prior to the date on which this Class Action Complaint was filed.

And a class of Michiganders ("ECOA Discrimination Class") who suffered violations of 15 U.S.C. § 1691(a)(1) initially defined as:

(b.)   All natural persons, (b.) who are members of a protected class; (c.) residing in the geographic boundaries of Michigan; (c.) to whom JPMorgan Chase Bank N.A. did provide a notice; (d.) similar to the notice attached as Ex. 1 to the Class Complaint (e.) within five years prior to the date on which this Class Action Complaint was filed.

80.   **Numerosity:** Upon information and belief, Plaintiff alleges the class of persons to be represented is so numerous that joinder of all members is impractical. Defendant's website states:

> JPMorgan Chase & Co. (NYSE: JPM), a financial holding company incorporated under Delaware law in 1968, is a leading financial services firm based in the United States of America ("U.S."), with operations worldwide. JPMorgan Chase had $3.7 trillion in assets and $286.4 billion in stockholders' equity as of June 30, 2021. The Firm is a leader in investment banking, financial services for consumers and small businesses, commercial banking, financial transaction processing and asset management. Under the J.P. Morgan and Chase brands, the Firm serves millions of customers in the U.S., and many of the world's most prominent corporate, institutional and government clients globally. JPMorgan Chase's principal bank subsidiary is JPMorgan Chase Bank, National Association ("JPMorgan Chase Bank, N.A."), a national banking association with U.S. branches in 43 states and Washington, D.C. as of June 30, 2021. Found at CORP Q2 2021 (jpmorganchase.com) last visited October 6, 2021. According to Chase's website, it serves "nearly half of America's households with a broad range of financial services, including personal banking, credit cards, mortgages, auto financing, investment advice, small business loans and payment processing" and has more than 4,700 branches. Found at About Chase Bank last visited October 6, 2021.

81.   **Typicality:** The letter mailed to Mr. Aboukhodr is an obvious form

letter. Mr. Aboukhodr and each member of the class are entitled to information about the principal reason that an adverse credit decision was made by Chase. Mr. Aboukhodr's claim is not only typical of the class, but it is likely identical to the claims of each class member for the Chase's failure to comply with the ECOA because it likely sent identical adverse action letters, none of which stated the specific or truthful reasons for taking adverse action required by the ECOA and/or Regulation B.

82. **Commonality:** There are questions of law and fact common to the class, and Plaintiff's claim are typical of the claims of all the potential class members. All are based on the same legal and remedial theories and the same reason stated in the denial letters. All are based on the simple class questions of whether or not Chase failed to provide a specific and truthful statement of reasons for taking adverse action on loan applications in its adverse action notices and whether such failure violated the ECOA.

83. **Adequacy:** Plaintiff will fairly and adequately protect the interest of the class. Plaintiff has retained counsel who is experienced in handling class actions and litigation under the Federal Consumer Credit Protection Act, including the Equal Credit Opportunity Act. He is committed to the class and have no conflict with it.

84. **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of the controversy as to the ECOA class. There

are no individual issues that would burden or impede litigation in the aggregate. Class resolution will provide a uniform decision on the legality of Chase's standard process. Further, absent class representation, it is certain that most class members will be unaware of their rights or be able to obtain adequate legal representation to prosecute those rights.

85. **Predominance:** Chase has acted or refused to act on grounds that apply generally to the ECOA class such that uniform relief is appropriate. The class claim and the relief sought in this class action predominate over any potentially individual claim a class member may have.

86. Chase has made a conscious or reckless decision to disregard the ECOA's requirement to provide a specific statement of reasons for taking adverse action on consumer credit applications despite the plain language of the statute and the regulations promulgated by the Consumer Financial Protection Bureau. It has acted on grounds that apply to the class, so that final injunctive relief and declaratory relief will benefit the entire class.

87. Chase has more than adequate resources to comply with the ECOA's adverse action requirements. It has violated the ECOA in a uniform way affecting thousands of consumers despite its knowledge of the adverse action notice requirements.

88. Despite the clear instructions set forth in the ECOA and Regulation B,

Defendant has refused to and failed to comply with the adverse action notice requirements persistently for the entire period of five years preceding the filing of this complaint.

### COUNT I – Equal Credit Opportunity Act
### 15 U.S.C. §1691(d)
### Class Claim

89. Plaintiff incorporates the above-alleged actions and omissions of Defendant with respect to the adverse action letter that failed to provide an adequate, truthful, primary, or specific statement of reasons for taking adverse action, which violated the ECOA, 15 U.S.C. §1691(d). Defendant's conduct is uniform as to the putative ECOA class.

90. Plaintiff and the putative ECOA class are entitled to a declaration that Defendant's adverse action notices violate the ECOA.

91. Plaintiff and the putative class suffered concrete informational injuries which the ECOA was designed to address, caused by Defendant's conduct in purposely supplying a false reason and refusing to disclose the principal reason for the cancelation of credit.

92. Plaintiff and the putative ECOA class are entitled to equitable relief in the form of an injunction requiring Defendant to send ECOA-compliant notices to all members of the putative class, together with the other mandatory disclosures required by the ECOA.

93. Under the ECOA, Plaintiff and the class are entitled to equitable and declaratory relief necessary to enforce the purpose of the statute, attorneys' fees, and costs to be determined by the Court. 15 U.S.C. § 1691e.

94. Under the ECOA, Plaintiff and the class are entitled to statutory punitive damages up to $10,000 for each violation.

### COUNT II – Equal Credit Opportunity Act
### 15 U.S.C. §1691(a)(1)
### Class Claim

95. Plaintiff incorporates the above-alleged actions and omissions of Defendant with respect to the adverse action letter that unlawfully discriminated against Plaintiff on the basis of race, religion, and/or national origin, which violated the ECOA, 15 U.S.C. §1691(a)(1). Defendant's conduct is uniform as to the putative ECOA class.

96. Plaintiff is a member of a protected class on the basis of race, religion or national origin because he is Muslim and middle eastern.

97. Defendant knew Plaintiff was a member of a protected class.

98. Upon information and belief, based on the reason provided of "possible reputational risk" and the fact Plaintiff was compliant with the terms of his credit card accounts, had excellent credit, and low credit utilization rate overall, Chase closed Plaintiff's account because of his race, religion, and/or national origin, which is unlawful credit discrimination under the ECOA, 15 U.S.C. §1691(a)(1).

99. Upon information and belief, Defendant knew that Plaintiff was a Middle-Eastern Muslim person and intentionally closed his Accounts on the 20th anniversary of 9/11.

100. Upon information and belief, the putative ECOA class have suffered similar discrimination to Plaintiff.

101. Upon information and belief, the putative ECOA class are entitled to a declaration that Defendant's mass account closures violate the ECOA.

102. Plaintiff and the putative class suffered concrete injuries which the ECOA was designed to address, caused by Defendant's conduct in discriminating against them by closing their credit accounts, an adverse action, solely based on race, religion, and/or national origin.

103. Defendant's conduct entitles Plaintiff and other similarly situated members of the ECOA class to actual statutory punitive damages of up to $10,000 per violation, plus attorneys' fees and costs pursuant to 15 U.S.C §1691e(d).

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Mohamad Aboukhodr respectfully requests judgment be entered against Defendant for the following:

A. Equitable and declaratory relief against Defendant pursuant to the ECOA;

B. Actual damages pursuant to ECOA, 15 U.S.C §1691e(a);

C.  Statutory punitive damages of up to $10,000 per violation pursuant to ECOA, 15 U.S.C §1691e(b);

D.  Attorneys' fees and costs pursuant to ECOA, 15 U.S.C §1691e(d);

E.  Any pre-judgment and post-judgment interest at the legal rate, and

F.  Any such other relief the Court deems just, equitable and proper.

**TRIAL BY JURY IS DEMANDED**.

**Mohammed Aboukhodr, on behalf of himself and all similarly situated individuals,**

/s/ Youssef H. Hammoud
Youssef H. Hammoud, CA #321934
PRICE LAW GROUP, APC
6345 Balboa Blvd., Suite 247
Encino, CA 91316
Tel: (818) 600-5596
Fax: (818) 600-5496
E-mail: youssef@pricelawgroup.com

David A. Chami, AZ # 027585
PRICE LAW GROUP, APC
8245 N. 85th Way,
Scottsdale, AZ 85258
Tel: (818) 600-5515
Fax: (818) 600-5415
E-mail: david@pricelawgroup.com

Susan M. Rotkis, AZ #032866
(Application for admission filed)
PRICE LAW GROUP, APC
2290 E Speedway Blvd
Tucson, AZ 85719
Tel: (818) 600-5506
Fax: (818) 600-5406
E-mail: susan@pricelawgroup.com